**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Natasha Carr,<br>Plaintiff,<br>v.<br>SSP America Incorporated, *et al.*,<br>Defendants. | No. CV-25-00911-PHX-JJT<br>**ORDER** |

Before the Court is Plaintiff Natasha Carr's Motion for Class Certification (Doc. 51, Mot.), to which Defendants responded in opposition (Doc. 54, Resp.), and Plaintiff replied (Doc. 57, Reply). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). As an administrative matter, Defendants have moved to seal documents containing sensitive business information that are attached to a declaration filed in opposition to Plaintiff's Motion to Certify (Doc. 55). Upon review, good cause appearing and there being no opposition, the Court will grant the motion (Doc. 55).

## I. BACKGROUND[1]

SSP America, Inc. owns and operates restaurants located in airports across the country. SSP offers and administers a 401(k) savings plan to its employees (the "Plan"). As relevant here, SSP entered a collective bargaining agreement ("CBA") with a labor union local to Phoenix, Arizona, called "Unite Here Local 11" (the "Union") that represents hospitality workers.

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

Plaintiff works as a restaurant server at one of SSP's restaurants located in the Phoenix Sky Harbor International Airport. She works under the erms of the CBA between SSP and the Union. In 2021, Plaintiff began participating in the Plan. Sometime in January 2024, SSP stopped remitting employer and employee contributions to the Plan.

Around this time, SSP was in the process of negotiating new CBA terms with the Union. During negotiations, the Union informed SSP that it missed employer and employee contributions. SSP committed itself to auditing the issue and paying Union members the missing contributions and lost earnings. In anticipation of a new CBA, the Union and SSP entered a "Side Letter" on October 11, 2024, that memorialized SSP's agreement to audit and remedy the missing contributions. (Doc. 56-3.) In the Side Letter, SSP and the Union agreed that "[a]ny dispute concerning the interpretation or application of this Agreement shall be resolved pursuant to the grievance procedure set forth in the CBA." That grievance procedure includes arbitration as the fourth and final step to resolving grievances. (*See* Doc. 56-4 at 24.) Contributions have still not been made and SSP's "company-wide assessment is still ongoing, and SSP has not yet provided the Union with the written accounting contemplated in the Side Letter." (Resp. at 3 n.2.)

On March 19, 2025, Plaintiff sued SSP under the Employee Income Security Act of 1974 ("ERISA"), on the following claims: (1) failure to make participant and match contributions to the Plan; (2) violation of fiduciary duties to administer the Plan and provide truthful and accurate Plan material; (3) failure to provide summary plan descriptions. (Doc. 1, Compl., ¶¶ 38–54.) Plaintiff now moves to certify two classes on these claims.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that a class action—that is, an action in which one or more members of a class sue on behalf of all members of the class—may proceed only if four prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

. . .

In addition, Rule 23(b) mandates at least one of the following factors are met: (1) there is a risk of inconsistent or varying adjudications across separate actions by individual class members or such adjudications would be dispositive of non-party class member interests; (2) injunctive or declaratory relief is appropriate respecting the class as a whole; or (3) questions of law or fact common to class members predominate over questions affecting individual members and a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). Thus, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (citation modified). Class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," which will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (citation modified).

## III. ANALYSIS

Plaintiff proposes the following two classes:

> **Class 1**: All participants in the Plan as of October 3, 2022 . . . for Count III and related portions of Count II.
>
> **Class 2**: All Plan participants who were active employees participating in the Plan and who on and after January 1, 2024, had at least one payroll period where employee Plan contributions were not timely deducted and transmitted to their investment accounts in accordance with their payroll elections . . . for Counts I and II.

(Mot. at 8.)[2] Defendants do not oppose certification of Class 1. (Resp. at 5.) But Defendants

[2] Plaintiff notes that her proposed second class is narrower than the one she pled in her Complaint. She maintains that it is unnecessary for her to amend the Complaint to conform it to the instant class definition but nonetheless moves for leave to amend her Complaint should the Court deem it necessary. (Mot. at 2 n.2.) Defendants take no issue with Plaintiff's description of the classes as modified here, so the Court will not require Plaintiff

oppose certification as to Class 2, arguing that the class lacks typicality and adequacy under Rule 23(a)(3)–(4).

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether class members have the same or similar injury and whether the action is based on conduct that is not unique to the named plaintiff. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The named plaintiff's claims and the rest of the class claims need not be identical to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685. If the claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily defeat typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017).

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citation omitted). To determine if the named plaintiffs adequately represent the class, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

Here, Plaintiff contends that her first and second claims are typical of Class 2 because the class members would all have the same injury—*e.g.*, the lack of contributions and loss of earnings—following the same course of conduct by Defendants—*e.g.*, failing to make the contributions. (Mot. at 16.) As for the adequacy of Plaintiff's representation of

---

to amend her pleading for the purpose of class certification.

the class, she avers that she has no conflict with the proposed class, will vigorously prosecute the claims, is aligned with the interest of class members, and her counsel is experienced in ERISA and class action litigation. (Mot. at 19; Doc. 51-1; Doc 51-2; Doc. 51-3.)

In response, Defendants argue that Plaintiff's claims are not typical of the class and, therefore, cannot adequately represent the class. According to Defendants, Plaintiff "stands in different shoes" than the putative class members because she is subject to the grievance procedure set forth in the CBA. (Resp. at 10.) That grievance procedure "could culminate in mandatory arbitration" that would bar Plaintiff's claims but not the claims of non-Union class members. (Resp. at 10.) Defendants cite *Avilez v. Pinkerton Government Services, Inc.*, 596 F. App'x 579 (9th Cir. 2015), and district court cases relying on *Avilez*, as support for the general proposition that typicality and adequacy are lacking where "the named plaintiff is subject to a different procedural regimen for adjudicating claims from the rest of the class." (Resp. at 9–10.)

In *Avilez* and the cited district court cases, most members of the putative class had signed an agreement that, if enforceable, would have compelled arbitration or a class-action waiver and barred the underlying claims. *See, e.g.*, *Avilez*, 596 F. App'x at 579. In each of those cases, the named plaintiff of the class was ***not*** subject to such a bar, so he or she would be unable to argue against potential affirmative defenses asserted against the unnamed class members. *Id.*; *Tan v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016), *aff'd sub nom. Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021) ("[The plaintiff]—having opted out of [the arbitration agreement]—would be unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members.").

As Defendants candidly observe, Plaintiff's position here is the "converse" of the plaintiffs in *Avilez* and *Tan*. (Resp. at 6 n.6.) Specifically, Plaintiff is subject to an agreement that, at least according to Defendants, could mandate arbitration, while other class members are not subject to that agreement. Still, Defendants contend that "[t]he legal

analysis is the same," and typicality and adequacy are destroyed where a named plaintiff and unnamed class members could confront different legal defenses. (Resp. at 6 n.6.)

In reply, Plaintiff agrees that arbitration is an affirmative defense but argues that it is inapplicable here because Defendants waived their right to compel arbitration of Plaintiff's claims. "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). As applied here, Defendants have known of their right to compel arbitration because they are a party to both the Side Letter and CBA that predate this litigation. And as Plaintiff correctly points out, Defendants have not expressly asserted arbitration as an affirmative defense in their answer (*see* Doc. 13 at 8–9), moved to compel arbitration, or demonstrated any intent to arbitrate the claims. In fact, under the express terms of the CBA, arbitration is *discretionary* and requires SSP to notify the parties of its "desires to pursue or grieve to arbitration." (*See* Doc. 56-4 at 24.) Based on the evidence produced by the parties, no such notice occurred. At this stage, the arbitration requirement is merely hypothetical and subject only to Defendants' "desires" to pursue it, and they have not. As a result, Plaintiff is in a position no different than that of non-Union class members.

Alternatively, Defendants argue that Plaintiff's claims lack typicality because SSP already agreed to pay missed contributions and lost earnings for Union participants (including Plaintiff) but has not made a similar promise to non-Union participants. (Resp. at 11.) Plaintiff argues that such a promise—which, at this time, remains unfulfilled—may affect damages but it does not defeat typicality. (Reply at 13.) The law favors Plaintiff's argument. Courts have held that "[t]he requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages[.]" *Buono*, 847 F.3d at 1118. Instead, typicality examines whether the injury and the conduct giving rise to the injury is the same or similar across the class. *Parsons*, 754 F.3d at 685. Plaintiff contends that the injury and preceding conduct causing the injury are the same across Class 2, and Defendants do not argue otherwise. Plaintiff has shown typicality.

Finally, the Court turns to the remaining aspects of adequacy that Defendants do not challenge. Based on the information before the Court, no conflict of interest between Plaintiff and the proposed class, Plaintiff's counsel is experienced in this area of the law, and both Plaintiff and her counsel demonstrate an ability to prosecute the present action vigorously on behalf of the class. Plaintiff has shown adequacy of representation.

Defendants do not challenge the remaining requirements of class certification, and the Court independently finds that they are met here. Class 2 is at least 900 members who are all members of the same Plan, *see* Fed. R. Civ. P. 23(a)(1)–(2), and prosecution of each members' individual claims may result in varying adjudications despite ERISA requiring that plan administrators like SSP treat participants consistently, *see* Fed. R. Civ. P. 23(b)(1)(A); *Traylor v. Avnet, Inc.*, 257 F.R.D. 521, 528 (D. Ariz. 2009) (finding ERISA action meets Rule 23(b)(1)(A)).

In sum, Plaintiff has sufficiently met the prerequisites of Rule 23(a) and at least one Rule 23(b) factor, so class certification is appropriate.

**IT IS ORDERED** granting Defendants' Motion to File Under Seal Exhibits to the Declaration of Jeffrey R. Walsh (Doc. 55).

**IT IS FURTHER ORDERED** directing the Clerk of Court to file under seal the documents lodged under seal at Doc. 56.

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Class Certification (Doc. 51).

Dated this 14th day of August, 2026.

Honorable John J. Tuchi
United States District Judge